

# NUMBER 13-21-00271-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MIHAIL CHRISSOS A/K/A MIHAIL CHRYSSOS AND
MARIA CHRISSOS A/K/A MARIA CHRYSSOS,**                    **Appellants,**

**v.**

**PLAINSCAPITAL BANK,**                                             **Appellee.**

---

### On appeal from the 105th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellants Mihail Chrissos a/k/a Mihail Chryssos and Maria Chrissos a/k/a Maria Chryssos appeal the trial court's imposition of death penalty sanctions and rendering of judgment in favor of appellee PlainsCapital Bank. By four issues, appellants contend (1) the trial court's judgment was not final because it was not signed after a conventional

trial and did not include a Mother Hubbard clause or contain finality language; (2) the trial court abused its discretion in granting death penalty sanctions; (3) the trial court erred in denying appellants' motion for new trial; and (4) the sanctions imposed violated appellants' due process rights. We reverse and remand.

## I. BACKGROUND

On December 10, 2018, appellee brought suit to collect appellants' deficient balance owed under a commercial promissory note. Appellants had executed the note and related deed of trust, which concerned commercial property located in Jim Wells County in the original principal amount of $828,000, in 2007. The note was modified in 2009, and in 2013, appellee acquired the note, deed of trust, and modification agreement. Appellants subsequently defaulted, and appellee accelerated the note. Following appellants' failure to cure the default, appellee sold the property at a foreclosure auction to itself at the bid price of $376,148. At the time of filing, appellee sought to collect a total amount of $308,539.

Appellants' original answer and counterclaim followed, wherein appellants alleged affirmative defenses of accord and satisfaction and failure to mitigate; a statutory defense under Texas Property Code § 51.003; and a fraudulent misrepresentation by omission counterclaim. Appellee filed its answer on January 30, 2019, and motion to compel discovery three months later on April 29, 2019. In appellee's motion, it attached several email exchanges with appellants' trial counsel, wherein appellee sought production of certain discovery documents. Appellee claimed that its last email to appellants' counsel, dated April 17, 2019, received no response.

2

Appellee filed a supplemental motion to compel on November 18, 2019, renewing its previous discovery request and apprizing the trial court of what had transpired since filing its initial motion. According to appellee, a hearing was set on June 5, 2019, and the day before the hearing, appellants' trial counsel advised appellee that one of the parties was out of the country and expected to return August 29, 2019. Appellee sent several successive emails, and on October 28, 2019, appellants' trial counsel indicated she would obtain her clients' signatures and necessary documentation to respond to the outstanding discovery requests. Appellants' counsel, however, thereafter stopped replying to appellee's emails. Although the clerk's record indicates a hearing on appellee's motion was held on December 3, 2019, the transcript was not provided on appeal. Appellee maintains the trial court orally ordered appellants to produce the requested discovery.

On October 26, 2020, appellee filed a motion to compel depositions and for sanctions, explaining that the parties had agreed to reset previously scheduled depositions that spring and summer due to COVID-19. However, appellants' trial counsel allegedly became unresponsive once more after July 2020. The trial court held a hearing on appellee's motion on December 10, 2020, wherein neither appellants nor their trial counsel appeared; the trial court granted appellee's motion for sanctions in the amount of $2,500 and ordered depositions to be scheduled by "December 1, 2020."[1] On December 23, 2020, appellee contacted appellants' trial counsel's firm and was advised that appellants' trial counsel was no longer employed there.

---

[1] The reporter's record indicates the trial court ordered appellants to schedule depositions by January 1, 2021. However, the trial court's order provided a deadline date of December 1, 2020.

On February 5, 2021, appellee filed a motion for judgment under Texas Rule of Civil Procedure 215.2, citing appellants' "continuing failure and refusal to confirm their availability for deposition despite repeated requests spanning multiple months." *See* Tex. R. Civ. P. 215.2(b) (providing for sanctions by the trial court following a party's failure to comply with an order or discovery request). Appellants' trial counsel appeared at the hearing on appellee's judgment motion and notified the trial court that, at then-present time, she was not eligible to practice law in Texas. Trial counsel informed the court that her clients were not present as they had not received notice of the hearing, she had "not contacted" them regarding any developments in the case, and she would be "get[ing] in touch" to "recommend[]" that they "get another lawyer." The following colloquy ensued:

| | |
|---|---|
| THE COURT: | Okay. Ma'am, I[ a]m going to[,] I guess[,] allow you to withdraw from this case considering that you still need to put up [sic] some things with the [Texas] State Bar. |
| [Appellants' trial counsel]: | I do. I[ ha]ve got a lot of things to clear up, Judge. I apologize. I[ ha]ve been taking care of a [sic] 101[-]year[-]old mother in Kansas, and my sister with Parkinson's in California, and I[ ha]ve got somebody in the nursing home. It has not been conducive. And I just need to see to it my client gets taken care of . . . . |
| . . . . | |
| THE COURT: | Sir, do you have anything you want to address with the [c]ourt at this point? |
| [Appellee's trial counsel]: | Yes, Your Honor. We have attempted to reach out to [appellants' trial counsel] on a number of different occasions. I[ ha]ve left messages on her cell phone. I[ ha]ve |

4

sent her e-mails. I [ ha]ve sent her actual physical letters. I do[ no]t believe that this—her appearance in this case is timely. We[ ha]ve had to incur attorney's fees in order to get this case to even move along, Your Honor.

The foreclosure was validly—was validly conducted, and the foreclosure—the first foreclosure sale was passed. The bank did attempt to work with the [appellants] on multiple occasions to bring the loan into good standing. Ultimately, the discussions to enter a forbearance agreement were not fruitful, and the second foreclosure sale was held, and that[ i]s how this decision has arose. There has not been a challenge to the actual foreclosure sale by [appellants].

And, Your Honor, this case actually here today is about the merits as [appellants' trial counsel] did note. It[ i]s about her failure to communicate and move this case along, and that[ i]s—which has cost the bank attorney's fees and delayed the over[]all case standing as well.

THE COURT: [Counsel], this sounds like they[ ha]ve been negotiating with your side several times here and it has [no]t worked.

[Appellants' trial counsel]: And, Your Honor, I do apologize for that. I have[ no]t been in my office for the most part for the last year or more. And it was—it[ i]s my fault. It[ i]s not my client's fault. It[ i]s my fault. But there have[ no]t been any jury trials for a year almost, and this case was not set. We did not have a scheduling order from the [c]ourt, and I—it[ i]s my fault. And I—

5

| THE COURT: | But, ma'am, how do you justify the delaying it any further? |
|---|---|
| [Appellants' trial counsel]: | I do[ no]t justify that. If we can get a scheduling order before the [c]ourt, and get deadlines set, and I can get someone who is—either get my CLE done or get someone who can, and we will seriously set those. I[ ha]ve got someone helping take care of my mom now, so I anticipate I will be back here and able to meet any deadlines that the [c]ourt may set. |
| . . . . | |
| THE COURT: | Ma'am, they[ a]re not required to work with your client after a certain point. And it seems like enough chances have been given to this point. So—plus your client[ i]s not here. So at this time I[ a]m going to grant this judgment. So, sir, if you can give me that order I[ wi]ll get it signed for you. |

On May 26, 2021, the trial court signed an order granting appellee's "Motion for Judgment" against appellants, ordering appellants to pay the unpaid principal amount, pre-and post-judgment interest, reasonable and necessary attorney's fees, and "[s]uch other and further relief, both general and special, at law or in equity, to which [appellee] may justly be entitled." This appeal ensued.

## II. JUDGMENT FINALITY

By appellants' first issue, they question whether the judgment before this Court is final and appealable given its inclusion of language contradicting finality in its observance of unspecified "other and further relief, both general and special, at law or in equity, to

6

which PlainsCapital may justly be entitled." *See generally Farm Bureau Cnty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015) (per curiam).

Generally, only final judgments are appealable. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581–82 (Tex. 2018) (per curiam); *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (per curiam) ("An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general rule, which is that appeals may only be taken from final judgments."). "Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) (citing *In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019)); *Farm Bureau Cnty. Mut. Ins. Co.*, 455 S.W.3d at 163 (reaffirming its rejection of a Mother Hubbard clause as a necessity for a finality finding).

This Court abated proceedings and remanded this case to the trial court for clarification of its May 26, 2021 order. *See Bella Palma*, 601 S.W.3d at 801 ("If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court." (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001), *superseded by statute as recognized in Indus. Specialists, LLC v. Blanchard Ref. Co. LLC*, 652 S.W.3d 11, 14 (Tex. 2022))); *see also Garcia v. Gonzalez*, No. 13-20-00221-CV, 2021 WL 5365105, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 18, 2021, no pet.) (mem. op.) (abating proceedings sua sponte for clarification of trial court's order to ensure appellate jurisdiction).

7

The trial court held an abatement hearing on October 27, 2022, and plainly expressed its intent that its judgment be considered final and "completely dispose of all claims against each of the parties." *See, e.g.*, *Bella Palma*, 601 S.W.3d at 802 ("Here, the clarifying order left no doubt about finality, so the court of appeals erred in turning to the record to resolve the issue. Instead, the appellate court was obligated to take the clarification order at face value, as a clear indication that the trial court intended the order to completely dispose of the entire case.") (cleaned up). In consideration of the trial court's findings, we conclude that the appealed order is in fact a final judgment. *See id.* at 801 (rejecting a "magic language" requirement). We overrule appellants' first issue.

## III.    DEATH PENALTY SANCTIONS

Appellants next challenge the trial court's assessment of death penalty sanctions.[2]

---

[2] The parties' assert competing characterizations of the judgment with appellee, contending that it sought and received a favorable judgment using a motion for summary judgment as its vehicle—not a judgment under Rule 215.2. *See* TEX. R. CIV. P. 215.2(b). Having reviewed the record, we disagree. Here, the trial court's judgment order, an overt response to appellee's motion, read in relevant part:

> Due to [appellants'] violation of this [c]ourt's December 16, 2020 Order, and continuing failure and refusal to confirm their availability for deposition despite repeated requests spanning multiple months, [appellee] respectfully moves the [c]ourt for Judgment pursuant to [Rule] 215.2.
>
> . . . .
>
> [Appellee] accordingly requests that the [c]ourt now award the sanctions sought herein pursuant to [Rule] 215.2, due to [appellants'] flagrant continuing abuse of the discovery process. Specifically, [appellee] requests that the [c]ourt enter judgment by default against [appellants], the disobedient party. *See* TEX. R. CIV. P. 215.2(b)(5).

As further noted in appellee's motion for default judgment, among the sanctions available under Rule 215.2 are orders "striking out pleadings or parts thereof," "dismissing with or without prejudice the action or proceedings or any part thereof," and "rendering a judgment by default against the disobedient party." *See id.* Such sanctions, which adjudicate a claim and preclude presentation of the merits of the case, are often referred to as "death penalty" sanctions. *See Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018) (per curiam); *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding) ("When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery."); *Tex. Mut. Ins. Co. v.*

8

## A.    Standard of Review and Applicable Law

A trial court may impose appropriate sanctions, after due notice and hearing, on parties who refuse to respond, or who give inadequate responses, to valid discovery requests or orders. *See* TEX. R. CIV. P. 215.1–.5; *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 884 (Tex. 2017). Such decision will be set aside only upon a showing of abuse of discretion. *Brewer v. Lennox Hearth Products, LLC*, 601 S.W.3d 704, 717 (Tex. 2020). We review the entire record independently to determine whether the trial court acted without reference to guiding rules and principles such that its ruling is arbitrary or unreasonable. *Id.*

"Although sanctions intended to secure compliance with court orders and deter noncompliance are often essential to the orderly conduct of trial-court proceedings, our precedent dictates that courts should avoid a 'trial by sanctions' whenever possible." *Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 575 (Tex. 2018) (per curiam). (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding)). "Sanctions so severe that they prevent a decision on the merits are not justified except in the most severe cases of flagrant bad faith." *Id.* at 575; *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014) (requiring that assessed sanctions be "just"). Reviewing courts generally follow a two-part test in determining whether a

---

*Narvaez*, 312 S.W.3d 94, 103 (Tex. App.—Dallas 2010, pet. denied) (treating the trial court's judgment as a default judgment under Rule 215 because "[t]he effect of the trial court's judgment was to preclude presentation of the merits of the case because of Texas Mutual's conduct, the same result as if the sanctions had been case-determinative."). Notably, no motion for summary judgment accompanied or preceded appellee's motion for judgment under Rule 215.2. Thus, it cannot be said that the final judgment, which granted appellee's prayer for "judgment by default" is anything but a sanctions-based default judgment.

9

particular sanction for discovery abuse is just. *Altesse Healthcare Sols.*, 540 S.W.3d at 572. "First, a direct relationship must exist between the offensive conduct, the offender, and the sanction imposed." *Petroleum Sols.*, 454 S.W.3d at 489. In other words, the sanction "should be visited upon the offender," and the "trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. "Second, a sanction must not be excessive, which means it should be no more severe than necessary to satisfy its legitimate purpose." *Petroleum Sols.*, 454 S.W.3d at 489; *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004) ("[I]n all but the most egregious and exceptional cases, the trial court must test lesser sanctions before resorting to death penalty sanctions.").

## B. Sufficient Attribution

Appellants principally argue that the trial court's sanctions unjustly punish them for their trial counsel's alleged discovery noncompliance for which they avow there was no evidence that they were aware of or personally contributed to. *See Petroleum Sols.*, 454 S.W.3d at 489; *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 917. Appellee conversely asserts that the offensive conduct—namely, the parties' failure to produce requested documents and dates for depositions—is attributable to appellants because they should have been cognizant of the discovery abuse which spanned over a year, and "[t]he record does not reflect any effort by [appellants], at any point over the extended time involved in this lawsuit, to contact the trial court or make any inquiry to the trial court or [appellee] about the case."

10

Although appellee filed two motions to compel discovery in this case, no record evidence supports the conclusion that appellants had personal knowledge of or any role in their trial counsel's failures to timely respond to appellee's discovery requests throughout the pendency of the case. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (concluding that the trial court abused its discretion where there was no evidence of whether the client or counsel was responsible for discovery abuse). Appellee filed its first motion to compel three months after its answer, and an agreement followed, wherein the parties resolved to stay the upcoming hearing on appellee's motion. Appellee concedes appellants produced some of the requested documents at that time. Successive agreed discovery extensions attributable to COVID-19-related circumstances and intermittent lapses in communication between the attorneys prompted appellee to file a second motion to compel one year later in October 2020. However, neither appellants nor their trial counsel appeared for the hearing on December 10, 2020, and the trial court issued an order granting appellee's motion to compel, which required that appellants' "counsel of record provide, within five (5) days of the entry of this [o]rder, [appellants'] available dates for the depositions of [appellants], and that such depositions be scheduled by no later than December 1, 2020 [sic]." *Cf. Allied Res. Corp. v. Mo-Vac Serv. Co., Inc.*, 871 S.W.2d 773, 779 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) (holding a motion to compel constituted a lesser sanction because it clearly and unambiguously warned "that the pleadings '[would] be stricken and judgment by default granted'" if the offending party did not comply with the motion to compel within a specific timeframe); *see also McKeithan v. Condit*, No. 13-16-00348-CV, 2018 WL 6219624, at *6 (Tex. App.—

11

Corpus Christi–Edinburg Nov. 29, 2018, no pet.) (mem. op.) (concluding "without more, an order to compel is not a lesser sanction" under Rule 215). Two months later, appellee filed its motion for default judgment under 215.2(b)(5).[3] Although it is unclear from the record how appellants' trial counsel received notice of the hearing, counsel appeared without appellants and notified the trial court that she had not been in communication with appellants for quite some time and that she was then-ineligible to practice law in the state. Trial counsel further affirmed that appellants were unaware of the hearing or outstanding discovery responses.

The events as presented here are insufficient to justify attributing the sanctionable conduct to appellants. *See Spohn Hosp.*, 104 S.W.3d at 882. Rather, the only evidence in the record that appellants were somehow involved in the misconduct is the implication that they knew of their trial counsel's actions based on the length of the case—an assumption refuted by appellants' trial counsel. *See Am. Flood Rsch., Inc. v. Jones*, 192 S.W.3d 581, 584–85 (Tex. 2006) (per curiam) (reaffirming its *TransAmerican* holding that "a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation"). *Compare Chandler v. KMCC Enters., LLC*, No. 02-20-00344-CV, 2021 WL 4783160, at *1 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op.) (holding trial court abused its discretion in issuing its default judgment death penalty sanctions because there was no evidence that appellants "were personally aware of or carried some responsibility" for their attorney's sanctionable

---

[3] Within days of the trial court's issued order to compel, appellee's counsel learned that appellants' trial counsel was no longer employed at the law firm that all electronic case correspondence had been and would continue to be sent to.

conduct), *and Hernandez v. Moya*, No. 03-18-00362-CV, 2019 WL 4068568, at *4 (Tex. App.—Austin Aug. 29, 2019, no pet.) (mem. op.) (concluding "it was improper for the trial court to impute the discovery non-responsiveness to [appellant]" where "the record implies that it was [appellant's attorney] who did not properly and timely respond to discovery requests," and there was no evidence of non-responsiveness inferable to appellant individually), *with Franke v. Palau*, No. 01-18-00424-CV, 2019 WL 2220112, at *3 (Tex. App.—Houston [1st Dist.] May 23, 2019, no pet.) (mem. op.) (concluding death penalty sanctions appropriate where evidence "does not unambiguously show that counsel alone was to blame," and counsel denied fault in discovery noncompliance), *and Exergy Dev. Group of Idaho, LLC v. Higher Power Energy, LLC*, No. 14-14-00788-CV, 2016 WL 109859, at *8, *10 (Tex. App.—Houston [14th Dist.] Jan. 7, 2016, pet. denied) (mem. op.) (concluding same where counsel "filed a motion to withdraw . . . because '[t]he attorney-client relationship has become unhealthy and cannot be continued due to the clients' failure to fully cooperate in discovery,'" which demonstrated that it was "Appellants—and not their trial counsel—[whom] failed to comply with their discovery obligations and demonstrated bad faith conduct").

The judgment here is unsupported by evidence necessary to satisfy the two-part test mandated for the review of sanctions orders. *See Petroleum Sols.*, 454 S.W.3d at 489. Thus, we conclude the trial court abused its discretion in its imposition of a death penalty sanction. *See id.*; *see also Sosa v. Union Pac. R.R. Co.*, No. 13-13-00257-CV, 2015 WL 2353024, at *8–9 (Tex. App.—Corpus Christi–Edinburg May 14, 2015, pet. dism'd) (mem. op.) (concluding the "trial court abused its discretion in imposing case-

13

determinative sanctions on the [appellants]" where "the record does not indicate that the [appellants] actually were or should have been aware of their counsel's conduct" during the six-year pendency of the case). We sustain appellants' second issue on appeal and do not reach appellants' remaining issues. *See* TEX. R. APP. P. 47.1.

## IV.    CONCLUSION

We reverse and remand for proceedings consistent with this memorandum opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
8th day of December, 2022.